UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| GREENWICH INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 11-66-ART |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| TONY LEE HALL, | ) ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This case turns on whether a good Samaritan who is outside his vehicle helping another is "occupying" his own vehicle for purposes of an insurance policy. He is not. Thus, Greenwich Insurance Company's motion for summary judgment must be granted.

## BACKGROUND

On December 20, 2006, Hall and his coworkers were driving to a job site. On the way, they observed a serious accident where a dark-colored SUV had driven into the rear-end of a coal truck. They drove past the accident but then felt an obligation to assist. So they returned to the accident. They parked their vehicle facing oncoming traffic with both the headlights and emergency flashers on.

Hall and two of his co-workers exited their truck. One of the co-workers, Billy Whitten, began flagging oncoming traffic, while Hall and the other went to aid the driver. While Hall was assisting the driver, an oncoming motorist, Raymond Phipps, lost control of his vehicle and struck Hall, injuring him.

In 2008, Hall filed a tort action against Phipps and various insurance companies in Virginia state court. More than two years later, Hall amended his complaint, to name his company's insurer, Greenwich Insurance Company, as a possible provider of uninsured or underinsured motorist coverage. He did so in case he could not obtain full recovery from Phipps and his insurers. R. 3-3. Greenwich then filed this federal declaratory judgment action. R. 1. Greenwich seeks a declaration that, under the terms of the policy it issued to JE Allen (Hall's employer), it does not owe any uninsured motorist coverage to Hall. *Id.* The parties have now filed dueling motions for summary judgment. R. 14; R. 17.

## ANALYSIS

This case turns on whether Hall was "occupying" his vehicle when he was outside of the vehicle assisting an injured person. J.E. Allen's insurance contract with Greenwich covers Hall if he was "occupying" the insured vehicle at the time of his injury. R. 17-4 at 1. Greenwich's policy defines "occupying" as "in, upon, getting in, on, out or off." *Id*. at 3. This would be an easy case if Kentucky courts simply interpreted the policy as written, since Hall clearly does not meet the policy's definition of "occupying" the insured vehicle. But the Kentucky Supreme Court's decision in *Kentucky Farm Bureau Mutual Insurance Company v. McKinney* expanded the definition of "occupying" for courts analyzing uninsured and underinsured motorist insurance policies. 831 S.W.2d 164, 168 (Ky. 1992) (finding coverage where the defendant was struck flagging traffic around her disabled vehicle). In doing so, the Kentucky Supreme Court created a four-factor test to help courts determine whether a person is occupying a vehicle at the time of the accident.

2

*Id.* Under Kentucky law, Hall "occupied" the insured vehicle if: (1) There was a causal relationship between his injury and the use of JE Allen's vehicle; (2) Hall was in reasonably close geographic proximity to JE Allen's vehicle at the time of his injury; (3) Hall was "vehicle oriented" at the time of his injury; and (4) Hall was engaged in a transaction essential to the use of the vehicle at the time of his injury. *Id.* at 168. While some of these factors would present a close call, the fourth does not. Hall cannot show that he was engaged in a transaction essential to the use of his vehicle. Thus, Greenwich's motion must be granted.

Hall argues that he was contributing to the safety of public roadways, which, he says, was essential to the use of the JE Allen vehicle. R. 15 at 9. This theory, however, fails in both fact and law.

As a factual matter, it is undisputed that Hall and his co-workers had driven by the accident when they made a decision to turn back and help the injured motorist. Was this the right thing to do? Absolutely. Was it essential to the use of their vehicle? Absolutely not. They had already driven by the accident, proving that the accident was not an obstacle to operating a vehicle on that road. Thus, from a factual perspective, it was not essential to the use of his vehicle.

But wait, says Hall, what about the fact that, as in *McKinney*, his injury occurred when he was "attempting to carry out the reasonable act of protecting not only the insured disabled vehicle, but also all other persons and vehicles using that highway on that particular occasion." *McKinney*, 831 S.W.2d at 167. But Hall misses a crucial fact: McKinney was flagging traffic around *her* disabled vehicle, not *any* disabled vehicle. So she was attempting to protect the insured vehicle and to protect

3

other people *from the insured vehicle*.  See also *Chandler v. Am. Guar. & Liab. Ins. Co.*, Civ. No. 04-226, 2005 WL 2250836 (E.D. Ky. Sept. 15, 2005) (neither party contested the essential use prong, where the injured party was protecting the insured vehicle and protecting others from the insured vehicle).  This is a key difference because Hall's actions, though admirable, were unrelated to the *use* of the insured vehicle.

Hall's case is closer to *Gill v. Specialty National Insurance Company*, No. 2005-CA-000694-MR, 2006 WL 658900 (Ky. Ct. App. Mar. 17, 2006).  There, a police officer parked his car and began directing traffic.  While doing so, he was struck by a passing motorist.  When the motorist's coverage failed to cover his injuries, he sued the city's insurer.  *Id.* at *1.  The *Gill* court held that the plaintiff was not covered by his police car's insurance policy because "he was not engaged in a transaction essential to the use of the vehicle, but had rather, . . . parked his vehicle in the roadway while he performed duties that *had nothing to do with securing its future use*."  *Id.* at *2 (emphasis added).  Thus, the "essential use" requirement appears to mean what it says: that the injured party must be engaged in an act essential to the operation of the insured vehicle.  Hall was not so engaged.

Hall makes several additional arguments as to why he should be covered and roots them in Kentucky public policy rather than *McKinney*'s legal factors.  None are persuasive.  First, Hall cites Kentucky case law for the proposition that ambiguities in insurance policies should be interpreted in favor of coverage, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008), and in favor of the reasonable expectations of the insured.  *Simon v. Cont'l Ins. Co.*, 724 S.W.2d 210, 212 (Ky.

4

1986). But these arguments are inapplicable since Hall has not demonstrated that the insurance policy in his case is ambiguous.

Second, Hall cites several Kentucky statutes and a portion of the DOT manual for the proposition that safety activities are essential to the use of vehicles traveling Kentucky roads. This is an inventive but ultimately unpersuasive argument. First, the statutes Hall cites—which provide civil protection for good Samaritans, Ky. Rev. Stat. § 411.148, and require drivers who are involved in an accident to stop and assist any injured parties, Ky. Rev. Stat. § 189.580(a)—do not cover Hall. Hall was neither involved in the accident nor sued for his good deeds. And the passage in the Kentucky Driver's Manual simply describes the procedure for assisting accident victims. R. 15-8 at 40. It does not somehow expand Kentucky's definition of "occupying." Without more, there is simply not enough evidence in these sources from which to imply a public policy mandate broad enough to cover Hall.

## CONCLUSION

In the end, Mr. Hall is a good Samaritan. He stopped to help a person in distress. Sadly, in doing so, he too was injured. The Court, however, is not at liberty to create bad law to cover good persons. If the Court were to do so, it would right one wrong, Mr. Hall's injury, while creating another: holding Greenwich responsible even when the law said otherwise. As Sir William Blackstone once said, "The liberty of considering all cases in an equitable light must not be indulged too far, lest thereby we destroy all law . . . And law, without equity, [though] hard and disagreeable, is much more desirable for the public good, than equity without law, which would make

every judge a legislator, and introduce the most infinite confusion . . . ." William Blackstone, *Commentaries on the Laws of England* 62 (1765).

It is therefore **ORDERED** that Hall's motion for summary judgment, R. 14, is **DENIED.** Greenwich's motion for summary judgment, R. 17, is **GRANTED.** The Court will enter an appropriate judgment. The Clerk shall **STRIKE** this case from the Court's active docket.

This the 20th day of November, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge